United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUKHRATJON ERKINOVICH MUKHITDINOV,<br>Petitioner,<br>v.<br>WARDEN, MESA VERDE ICE PROCESSING CENTER, *et al.*,<br>Respondents. | Case No. 1:26-cv-04417-NW<br>**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: ECF Nos. 1, 2 |

This habeas action concerns the detention of Petitioner Shukhratjon Erkinovich Mukhitdinov, who has been detained by U.S. Immigration and Customs Enforcement ("ICE") since October 15, 2025. For the reasons explained below, the Court dismisses Petitioner's writ of habeas corpus, and resolves the motion for a preliminary injunction as moot.

## I. BACKGROUND

Based on the parties' submissions, the Court finds the following facts. Petitioner is a citizen of Uzbekistan who entered the United States on April 15, 2023 near Calexico, California. ECF No. 1 at 6. He was subsequently arrested by DHS, served a Notice to Appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and placing him in removal proceedings, and then was released from custody. *Id.* at 16.

Following his release from immigration detention, Petitioner began living in Brooklyn, New York, applied for asylum, and was granted work authorization by USCIS. *Id.* at 6; ECF No. 15 ¶¶ 3–5. Pursuant to his work authorization, he began working as a mover, and later as a commercial truck driver. ECF No. 15 ¶ 5.

Petitioner's wife and three children still live in Uzbekistan. *Id.* ¶ 2. Sometime prior to his

recent detention, Petitioner learned that his youngest son was diagnosed with cancer, requiring expensive medical treatment. *Id*. ¶ 6. It was this diagnosis that allegedly jump started the chain of events leading to Petitioner's detention. To assist in paying for his son's medical treatment, Petitioner borrowed money to send back to his family. *Id*. The person from whom Petitioner borrowed the money later demanded immediate repayment, and then threatened Petitioner and his family with physical violence when Petitioner explained that he was unable to pay on short notice. *Id*. The individual then demanded that Petitioner participate in a shoplifting scheme in lieu of payment, and Petitioner complied. *Id*. He was subsequently arrested by Nassau County Police and charged with one count of fourth-degree grand larceny under New York Penal Law §155.30(1), and was released from state custody on October 11, 2025. ECF No. 1 at 7. Neither party has indicated the current status of this charge.

The Nassau County Police contacted ICE following Petitioner's release and informed them that Petitioner was required to report to the police station on October 15, 2025. ECF No. 9-6 at 2. Based on this intel, ICE issued a warrant for Petitioner's arrest on October 14, 2025. *See* ECF No. 9-7. They detained him the following day when he reported to the police department as instructed. ECF No. 9-6 at 2.

Petitioner has now been detained for over eleven months. During his time in detention, several events occurred that are relevant to his claims here. First, Petitioner's application for asylum was denied by an immigration judge, and he appealed that decision to the Board of Immigration Appeals. ECF No. 1 at 7. Accordingly, no final order of removal is currently in place. Second, Petitioner attended a bond hearing before an immigration judge on March 11, 2026 at which the judge denied bond finding that it lacked jurisdiction to grant such relief. *Id*. Finally, following his first bond hearing, Petitioner filed a pro se habeas petition in the District of Arizona claiming that his "prolonged detention violates … his due process rights." *See* ECF No. 9-1; ECF No. 9-2. That petition was granted in part, with the court ordering that Petitioner was entitled to a bond hearing under 8 U.S.C. § 1226(a), and that he be given that hearing within seven days "or [be] release[d] from custody under the same conditions that existed before Petitioner's detention." ECF No. 9-2 at 2. The Court, however, did not opine on the merits of Petitioner's prolonged

United States District Court
Eastern District of California

detention claim.

That court ordered bond hearing was allegedly held on June 9, 2026 with the immigration judge finding that "[Petitioner] is an extreme flight risk" due to his "recent arrest for organized retail theft/felony grand larceny which was captured on security cameras[,]" as well as his "brief period in the United States," "limited family or property ties[,]" and the denial of his asylum application. ECF No. 9-4 at 1. Petitioner states in his declaration that he does not recall attending this hearing, though the judge's order indicates that he reserved his appeal of the decision. ECF No. 15 ¶ 9; ECF No. 9-4 at 2. Based on what is before the Court, it appears an appeal was never filed.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Petitioner argues that his "re-detention … after years of liberty in the interior, and [the Government's] continued detention of him without an individualized determination of dangerousness or flight risk before a neutral decisionmaker, violates the Due Process Clause of the First Amendments." ECF No. 1 at 9–10. He contends that he was entitled to notice and a pre-deprivation hearing *before* he was detained by ICE, and the Government's failure to provide that process at the outset of his detention entitles him to release. *See* ECF No. 14 at 11–14. The

Government does not offer any argument with respect to the merits of Petitioner's claim. Instead, they move to dismiss the petition as "successive" and as an "abuse of the writ." ECF No. 9 at 2–3. They further argue that dismissal is proper because Petitioner failed to exhaust his administrative remedies by appealing the June 9, 2026 bond hearing to the Board of Immigration Appeals ("BIA"). *Id*. at 3–4. The Court rejects Respondents' arguments but finds that due process does not entitle Petitioner to release.

**A. Successive Petition and Abuse of the Writ**

The general bar against successive habeas petitions set forth in 28 U.S.C. § 2244 does not apply to petitions filed under § 2241, such as the petition here. *See Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000) ("§ 2244(a) bars successive petitions seeking review of the propriety of a detention pursuant to a judgment of a court of the United States[,] and individuals … in custody pending the outcome of their immigration proceedings are not detained pursuant to a judgment of a court of the United States.") (internal quotation marks omitted). However, the Ninth Circuit has recognized that the common law doctrine of the abuse of the writ can apply to successive habeas petitions challenging immigration detention filed pursuant to § 2241. *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011). "Generally, the abuse of the writ doctrine 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.'" *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) (quoting *Calderon v. United States Dist. Ct.*, 163 F.3d 530, 538 (9th Cir. 1998) (en banc)). It is the Government's burden to plead abuse of the writ by noting, with clarity and particularly, petitioner's prior writ history and the claims that appear for the first time. *McClesky v. Zant*, 499 U.S. 467, 494-95 (1991). If the Government meets this burden, the burden shifts to Petitioner to "show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain that claim." *Alaimalo*, 645 F.3d at 844.

Assuming that Respondents have met their burden here, the Court finds that Petitioner has shown cause for bringing a successive petition and that prejudice would result from failure to entertain his claim. Based on the Arizona court's prior order, Petitioner only raised a due process claim challenging his prolonged detention, whereas the petition here brings a due process claim

challenging his *re-detention*—i.e., he is arguing that he was entitled to process before his arrest by ICE given that he was previously released from DHS custody in 2023. *See* Dkt. No. 9-2 at 1–2. Though this factual predicate existed when Petitioner filed his first petition, the Court will not fault him for failing to raise it "because English is not Petitioner's native language and he filed his previous petition without aid of a lawyer[.]" *Quintanilla v. Hernandez*, No. 2:26-CV-01629-TMC, 2026 WL 1827541, at *3 (W.D. Wash. June 25, 2026). Accordingly, the Court finds that "cause exists for his failure to raise in his first petition the claims he raises here," and injustice would result by failing to consider them here. *Id.*

**B. Exhaustion of Administrative Remedies**

The Court further rejects Respondents' argument that the petition must be dismissed because Petitioner failed to exhaust his administrative remedies by appealing his bond decision to the BIA. ECF No. 9 at 4. "On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). As the Ninth Circuit has stated:

> Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted).

Even if these factors weigh in favor of requiring exhaustion, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). One such exception that courts have recognized is where a petitioner's detention "has been carried out without notice and an individualized assessment" in violation of due process. *Ramirez v. Warden of Golden State Annex Det. Facility*, No. 1:26-CV-02544-DAD-AC, 2026 WL 1078250 (E.D. Cal. Apr. 21, 2026). This type of claim cannot be reviewed by the BIA because "is well settled that

[the BIA] lack[s] jurisdiction to rule on the constitutionality of the [Immigration and Nationality Act] and [its] regulations." *In re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997); *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995) ("Clearly the BIA has no jurisdiction to decide questions of the constitutionality of the immigration laws"). As Petitioner brings a claim that his detention without notice and a pre-deprivation hearing violated his procedural due process rights, the Court proceeds to the merits of his claim.

**C. Due Process**

Petitioner argues that the Due Process Clause required the Government to provide him with notice and a pre-deprivation hearing *before* he was arrested. ECF No. 1 at 9–11; ECF No. 14 at 11–14. He maintains that the Government's post-hoc hearing is not sufficient to cure this due process violation and entitles him to release. ECF No. 14 at 15–22. Though Petitioner clearly has a protected liberty interest in his freedom, the Court finds that due process does not require his release.

**1. Liberty Interest**

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). As such, courts throughout the Ninth Circuit have found that noncitizens paroled into the country obtain a liberty interest in their continued freedom. *See, e.g.*, *Ramazan M. v. Andrews*, No. 1:25-CV-01356-KES-SKO (HC), 2025 WL 3145562, at *5 (E.D. Cal. Nov. 10, 2025); *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1103 (E.D. Cal. 2026). Even though "ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). The same is true for Petitioner here who was paroled into the United States by DHS in 2023, and permitted to live at liberty for two years prior to his re-detention.

**2. *Matthews* Factors**

Turning next to what process is due, many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three

factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here these factors weigh in the Government's favor.

The first factor—the private interest that will be affected if Petitioner's detention continues—favors Petitioner. He has been detained for eleven months, and prior to his re-detention he had been at liberty for two years. This permitted him to pursue gainful employment, rent an apartment, and contribute to his community. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In addition, in *Rodriguez Diaz*, the Ninth Circuit considered a similar length of detention and "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia, Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011)). A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. This factor tips in the Government's favor. Though the "risk of an erroneous deprivation of [a petitioner's] interest is high" where a detainee "has not received any bond or custody redetermination hearing," Petitioner has received a bond hearing here. *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020). At the hearing the immigration judge concluded Petitioner was an "extreme flight risk" due to a multitude of factors, including a pending criminal case for a felony offense, the denial of his asylum application, and the fact that Petitioner's immediate family all live in Uzbekistan. *See* ECF No. 9-4 at 1. Though Petitioner was not provided with this hearing until several months after his detention, the Court cannot find that providing this hearing *before* he was re-detained would

have prevented an erroneous deprivation of Petitioner's liberty as the Government had a prima facie basis for revocation of Petitioner's parole at the time of his arrest—specifically his recent felony charge. Indeed, Petitioner had only four days before been arrested and charged with a felony offense, and ICE detained him while he was reporting to the police station regarding that charge. *See* ECF No. 9-6 at 2. Courts in this district have found that pre-deprivation process is not necessary in circumstances where "Respondents may well have a legitimate interest in Petitioner's detention based on the nature and recency of Petitioner's encounters with law enforcement[,]" and instead any due process violation can be remedied by post-deprivation process. *Novais Delgado v. Warden of the California City Det. Facility*, No. 1:26-CV-07027-JLT-EPG, 2026 WL 2718830, at *2 (E.D. Cal. Sept. 15, 2026); *see also*, *Galindo Vega v. Warden, Golden State Annex Det. Facility*, No. 1:26-CV-03604 DC SCR, 2026 WL 1707804, at *1 (E.D. Cal. June 12, 2026) (finding that post-arrest hearing was sufficient process where Petitioner was detained immediately following his arrest and has criminal charges pending against); *Addemys N.R. v. Warden of California City Det. Facility*, No. 1:26-CV-03892-MWJS, 2026 WL 1831763, at *3 (E.D. Cal. June 25, 2026) (similar). That is effectively what occurred here.

Further, the Court cannot conclude on this record that the immigration judge failed to act as a neutral arbiter at his June bond hearing. Though Petitioner argues that Immigration Courts across the board are no longer acting with neutrality, and that the Immigration Judge who conducted his hearing has had a steep drop in bond grant rates, Petitioner has not pointed to any facts indicating that the Immigration Judge acted partially at his hearing. *See Sodikov v. Warden, California City Det. Ctr.*, No. 1:26-CV-01720-DC-CSK (HC), 2026 WL 1257829, at *1 (E.D. Cal. May 6, 2026) ("Petitioner provides no evidence in support of his claim that the immigration judge who presided over his bond hearing was biased against him or that she "blindly" followed Department of Homeland Security policy."). Accordingly, the second *Mathews* factor tips in the Government's favor.

The third factor—the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail—weighs in their favor as well. The Government's aim of "protecting the public from dangerous

criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have recognized, however, the key Government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-CV-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the Government held a substantive bond hearing for Petitioner in June where it considered his criminal history, removal order, and his familial ties to the United States. Given (1) the recency of Petitioner's bond hearing, (2) the Government's interests in assuring Petitioner's presence for removal, and (3) the fiscal and administrative burdens on the Government if it were required to release Petitioner and then hold a renewed hearing in order to re-detain him, this factor favors the Government.

Under these circumstances, the *Mathews* factors weigh in the Government's favor and outweigh Petitioner's interest in release and pre-deprivation process prior to his detention. To the extent Petitioner takes issue with the bond hearing itself, Petitioner can exercise his appellate rights before the BIA or seek a renewed bond hearing under 8 U.S.C. § 1226(a) should his circumstances materially change.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Petition is dismissed. The Clerk of Court is directed to close this case and enter judgment for Respondents. This order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: September 25, 2026

Noël Wise
United States District Judge